UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT DIESEL CORPORATION,
a Delaware corporation,

   Plaintiff,

v.

MARTINREA HONSEL MEXICO SA DE CV, a foreign corporation,

   Defendant.

Case No. 2:24-cv-11557

Hon. Jonathan J.C. Grey

Mag. Kimberly G. Altman

## Declaration of Everitt Lancaster

I, Everitt Lancaster, hereby declare as follows:

1. I have recently been the vice president of global sales for propulsion systems for Martinrea International, Inc. In that role, I had certain responsibilities for and often acted on behalf of Martinrea Honsel Mexico SA de CV. Starting in January 2025, I am now the vice president of global sales, FMG. In my new role, I do not have a day-to-day role for Martinrea Honsel Mexico, although I am still involved in some high-level issues, including those discussed in this declaration.

2. I am familiar with the contracts between Detroit Diesel Corporation and Martinrea Honsel Mexico that are the subject of the above-captioned lawsuit. I am also familiar with the dispute that led to that lawsuit, and with Martinrea Honsel Mexico's decision to reject future releases from DDC and so exit that contractual relationship.

3. The relevant contract history begins in 2013, when the parties formed a long-term agreement (LTA). The parties formed an addendum to the LTA in 2020, which extended the contract. Then, in 2024, the parties formed an amended and restated long term agreement. This amendment extended the contract yet again.

4. Since January 1, 2024, the parties have been operating under the LTA, as amended in 2020 and 2024. Under that contract, DDC communicates the specific quantities that it needs on specific dates through weekly releases. Each release shows quantities going out for many weeks, but under the "Doing Business with Detroit Diesel Corporation" guide incorporated into the LTA, only those quantities shown for the first eight weeks are firm. In practice, though, the parties have reduced the firm period even further.

5. DDC has routinely told Martinrea Honsel Mexico to ship to an emailed release schedule and to not follow the EDI (the electronic data interchange, which many in the supply chain use to communicate releases). These emailed releases purported to be firm for only four weeks, with DDC often changing specific quantities that were more than four weeks out. In fact, DDC sometimes changed specific quantities even within that four-week "firm" window.

6. DDC served Martinrea Honsel Mexico with this lawsuit on February 6, 2025. A few days later, Martinrea Honsel Mexico informed DDC that it was rejecting all future releases, that it would fulfill the four weeks of firm quantities on the last accepted release but no more, and that its contractual obligations to delivery parts to DDC would thus expire on March 7, 2025.

7. Martinrea Honsel Mexico has explained to DDC that it does not wish to do business with a customer that is suing it. It has also explained that it is willing to enter into a new agreement to continue deliveries to DDC, but only on terms that include DDC's full release of all claims that were or could have been asserted in this action. This means that the parade of horribles in DDC's motion—the shutdowns, the layoffs, the hundreds of millions of dollars in lost sales—will come to pass only if DDC allows them to. This is because even without the injunction that DDC seeks, Martinrea Honsel Mexico is willing to negotiate an agreement to keep parts flowing and the supply chain operating.

8. Martinrea Honsel Mexico has delivered all firm quantities on all releases it has accepted, which is more than one of each part at issue.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of March, 2025.

_____
Everitt Lancaster